**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION**

```
JAMES GILL,                    *
                               *
     Plaintiff,                *    CIVIL ACTION NO. 15-00146-B
                               *
vs.                            *
                               *
CAROLYN W. COLVIN,             *
Commissioner of Social         *
Security,                      *
                               *
     Defendant.                *
```

**ORDER**

Plaintiff James Gill (hereinafter "Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security denying his claim for supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq*.  On June 13, 2016, the parties consented to have the undersigned conduct any and all proceedings in this case. (Doc. 18).  Thus, the action was referred to the undersigned to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.  Upon careful consideration of the administrative record and the memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner be **AFFIRMED**.

**I.   Procedural History**

Plaintiff protectively filed his application for benefits

on September 12, 2011.  (Tr. 312)[1].  Plaintiff alleges that he has been disabled since February 13, 2012, due to problems with his back, neck, shoulder, and depression.  (Id. at 217, 221, 316, 339).

Plaintiff's application was denied and upon timely request, he was granted an administrative hearing before Administrative Law Judge Mary E. Helmer (hereinafter "ALJ") on May 8, 2013. (Id. at 214).  Plaintiff attended the hearing with his counsel and provided testimony related to his claims.  (Id. at 214, 218).  A vocational expert ("VE") also appeared at the hearing and provided testimony.  (Id. at 224).  On July 15, 2013, the ALJ issued an unfavorable decision finding that Plaintiff is not disabled.  (Id. at 198).  The Appeals Council denied Plaintiff's request for review on January 21, 2015.  (Id. at 1-2). Therefore, the ALJ's decision dated July 15, 2013, became the final decision of the Commissioner.

Having exhausted his administrative remedies, Plaintiff timely filed the present civil action.  (Doc. 1).  The parties waived oral argument on June 3, 2016 (Doc. 17), and agree that this case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

---

[1] When referencing the Social Security Transcript, the Court uses the page numbers found on the transcript, rather than the page numbers utilized by CM-ECF.

## II.  Issues on Appeal

    1.  **Whether the ALJ erred in rejecting the opinion of treating physician, Dr. M.J. Fitzgerald, M.D., while relying on the opinion of consultative physician, Dr. Richard Harris, M.D.?**

    2.  **Whether the ALJ erred in evaluating Plaintiff's complaints of pain?**

    3.  **Whether the Appeals Council erred in failing to adequately examine the additional evidence submitted by Plaintiff?**

## III. Factual Background

Plaintiff was born on October 13, 1973, and was thirty-nine years of age at the time of his administrative hearing on May 8, 2013.  (Tr. 214, 312).  Plaintiff completed the eleventh grade in high school, attending regular classes.  (Id. at 317).  He last worked from 2002 to 2005 as a manual laborer doing construction work.  (Id.).  He stopped working in May 2005 when he went to jail "for child support."  (Id. at 316).

At his hearing, Plaintiff testified that he can no longer work because of pain from injuries he sustained to his back and neck in a car accident that occurred on February 13, 2012.[2]  (Id.

_____

[2] Plaintiff originally filed his application for benefits on September 12, 2011, alleging problems with his back and foot. (Tr. 312, 316).  While his application was pending, he was injured in a car accident on February 13, 2012, which caused problems with his back, neck, and shoulder.  (Id. at 312, 339). At his hearing, Plaintiff amended his onset date from September

3

at 219, 221-22, 224, 339).  He testified that he takes pain medication (Lortab and Soma), which provides relief from the pain but makes him drowsy.[3]  (Id. at 219-20, 324).  He also testified that he has trouble sleeping and estimated that he sleeps about six hours a night, broken up into two hour increments.  (Id. at 223).  Plaintiff testified that he has also been diagnosed with Hepatitis C, for which he receives no treatment.  (Id.).

Plaintiff testified that he lives with his mother, and his normal routine consists of getting up, walking out on the porch, and lying down about six hours during the day.  (Id. at 218, 220).  Plaintiff testified that he does not do any chores around the house, and while he can drive, he has not driven since his car accident in February 2012.  (Id. at 218-20).

Plaintiff testified that he uses a cane and can stand for about five minutes, sit for about ten minutes, walk for about four minutes, and lift/carry four pounds.  (Id. at 220-21, 224).  He testified that he also has problems with memory loss.  (Id. at 221).

## IV. Analysis

---

1, 2011, to February 13, 2012, alleging problems with his back, neck, and depression.  (Id. at 217, 219, 221, 224).

[3] In his pain questionnaire form, Plaintiff reported that his pain medication causes no side effects.  (Tr. 324).

A.   __Standard of Review__

In reviewing claims brought under the Act, this Court's role is a limited one. The Court's review is limited to determining 1) whether the decision of the Secretary is supported by substantial evidence and 2) whether the correct legal standards were applied.[4] __Martin v. Sullivan__, 894 F.2d 1520, 1529 (11th Cir. 1990). A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. __Sewell v. Bowen__*, 792 F.2d 1065, 1067 (11th Cir. 1986). The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence. __Brown v. Sullivan__, 921 F.2d 1233, 1235 (11th Cir. 1991); __Bloodsworth v. Heckler__*, 703 F.2d 1233, 1239 (11th Cir. 1983) (holding substantial evidence is defined as "more than a scintilla, but less than a preponderance" and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."). In determining whether substantial evidence exists, a court must view the record as a whole, taking into account evidence favorable, as well as unfavorable, to the Commissioner's decision. __Chester v. Bowen__, 792 F. 2d 129, 131 (11th Cir. 1986); __Short v. Apfel__, 1999 U.S. Dist. LEXIS 10163, *4 (S.D. Ala. June 14, 1999).

---

[4] This Court's review of the Commissioner's application of legal principles is plenary. __Walker v. Bowen__, 826 F.2d 996, 999 (11th Cir. 1987).

B.  **Discussion**

An individual who applies for Social Security disability benefits must prove his or her disability. 20 C.F.R. §§ 404.1512, 416.912. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); see also 20 C.F.R. §§ 404.1505(a), 416.905(a). The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven his disability.[5] 20 C.F.R.

---

[5] The claimant must first prove that he or she has not engaged in substantial gainful activity. The second step requires the claimant to prove that he or she has a severe impairment or combination of impairments. If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience. If the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove an inability to perform their past relevant work. Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history. Id. Once a claimant meets this burden, it becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's residual functional capacity, age, education, and work history. Sryock v. Heckler, 764 F.2d 834, 836 (11th Cir.

§§ 404.1520, 416.920.

In the case *sub judice*, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since February 13, 2012, his amended alleged onset date, and that he has the severe impairments of mild degenerative changes of the lumbar spine, mild narrowing of the cervical spine, small disc protrusion at T11-12, and depression.[6]   (Tr. 200).   The ALJ further found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any of the listed impairments contained in 20 C.F.R. Part 404, Subpart P, Appendix 1.[7]   (Id. at 203).

The ALJ concluded that Plaintiff retains the residual functional capacity (hereinafter "RFC") to perform a range of light work, except "with an option to sit or stand at 60 minute intervals; never climb ladders, ropes, or scaffold; never stoop,

---

1985).   If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to perform those jobs in order to be found disabled.   Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999).   See also Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing Francis v. Heckler, 749 F.2d 1562, 1564 (11th Cir. 1985)).

[6] The ALJ found Plaintiff's hyperlipidemia and hepatitis C to be asymptomatic and, thus, non-severe.   (Tr. 203).   Plaintiff does not challenge those findings.

[7] The ALJ concluded that Plaintiff has only mild restrictions in activities of daily living and social functioning, moderate difficulties in concentration, persistence or pace, and no episodes of decompensation.   (Tr. 204).

kneel, crouch, or crawl; and avoid all exposure to excessive vibration, unprotected heights, and moving machinery.  Claimant is limited to performing work that is simple and routine in nature, involving repetitive tasks and requiring only simple, work-related decisions, with few, if any, workplace changes.  No manipulative, visual, or communicative limitations are established." (Id. at 205).  The ALJ also determined that while Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, his statements concerning the intensity, persistence and limiting effects of the alleged symptoms were only partially credible for the reasons explained in the decision.  (Id. at 206).  The ALJ found that Plaintiff is unable to perform any of his past relevant work as a general laborer (unskilled, heavy).  (Id. at 208).  However, utilizing the testimony of a VE, the ALJ concluded that considering Plaintiff's residual functional capacity for a range of light work, as well as his age, education and work experience, there are jobs existing in the national economy that Plaintiff is able to perform, such as a "table worker," "weight tester," and "sorter," all of which are classified as unskilled and sedentary.  (Id. at 209).  Thus, the ALJ concluded that Plaintiff is not disabled.  (Id.).

The Court now considers the foregoing in light of the record in this case and the issues on appeal.

1.  **Issues**

A.  **Whether the ALJ erred in rejecting the opinion of treating physician, Dr. M.J. Fitzgerald, M.D., while relying on the opinion of consultative physician, Dr. Richard Harris, M.D.?**

In this case, Plaintiff argues that the ALJ erred in rejecting the opinion of his treating physician, Dr. M.J. Fitzgerald, M.D., set forth in a letter dated May 8, 2013, that Plaintiff is unable to work because of "moderately severe to severe pain" caused by a disc bulge at L5-S1, a disc bulge at L4-L5, a disc bulge at L4-L4, a central protrusion at T-11-12, and "injuries" to his ribs, neck, and shoulders in a car accident that occurred on February 13, 2012. (Tr. 590; Doc. 12 at 2). In the letter, Dr. Fitzgerald opined that, because of Plaintiff's pain, he is unable to maintain concentration, persistence, or pace for more than one hour at a time; that after an hour, the pain he experiences causes him to abandon most tasks and seek relief; that he is unable to sit, stand, or walk for a combined six hours in an eight-hour day; and that the remaining two hours of the day has to be spent lying down in an effort to resolve the pain in his neck and back. (Id.).

Plaintiff also argues that the ALJ erred in relying on the December 13, 2011 consultative opinion of Dr. Richard Harris, M.D. that Plaintiff is capable of performing light and sedentary

work.    (Tr. 378; Doc. 12 at 2).   Plaintiff argues that Dr. Harris did not have the benefit of subsequent CT scans and MRIs of Plaintiff's spine ordered by Dr. Fitzgerald after the February 2012 car accident. Thus, the ALJ should not have relied on Dr. Harris' opinions. (Doc. 12 at 2).

The Commissioner counters that the medical evidence does not support Dr. Fitzgerald's opinions set forth in his letter dated May 8, 2013 as the opinions expressed therein are inconsistent with the substantial evidence in the case. Thus, they were properly discredited by the ALJ. (Doc. 15 at 5-7). The Commissioner further contends that Dr. Harris' opinions are consistent with the substantial evidence in the case; thus, the ALJ did not err in crediting them. (Id. at 5, 8-9). Having carefully reviewed the record in this case, the Court agrees that Plaintiff's claim is without merit.

As part of the disability determination process, the ALJ is tasked with weighing the opinions and findings of treating, examining, and non-examining physicians.   In reaching a decision, the ALJ must specify the weight given to different medical opinions and the reasons for doing so. See Winschel v. Commissioner of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011). The failure to do so is reversible error.   See Williams v. Astrue, 2009 U.S. Dist. LEXIS 12010, *4, 2009 WL 413541, *1 (M.D. Fla. 2009).

When weighing the opinion of a treating physician, the ALJ must give the opinions "substantial weight," unless good cause exists for not doing so. Costigan v. Commissioner, Soc. Sec. Admin., 2015 U.S. App. LEXIS 2827, *10, 2015 WL 795089, *4 (11th Cir. Feb. 26, 2015) (citing Crawford v. Commissioner of Soc. Sec., 363 F.3d 1155, 1160 (11th Cir. 2004) and Broughton v. Heckler, 776 F.2d 960, 962 (11th Cir. 1985)).  The opinion of "a one-time examining physician — or psychologist," on the other hand, is not entitled to the same deference as a treating physician. Petty v. Astrue, 2010 U.S. Dist. LEXIS 24516, *50, 2010 WL 989605, *14 (N.D. Fla. Feb. 18, 2010) (citing Crawford, 363 F.3d at 1160).  An ALJ is also "required to consider the opinions of non-examining state agency medical and psychological consultants because they 'are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation.'" Milner v. Barnhart, 275 Fed. Appx. 947, 948 (11th Cir. 2008) (unpublished) (citing 20 C.F.R. § 404.1527(f)(2)(i)).  "The ALJ may rely on opinions of non-examining sources when they do not conflict with those of examining sources." Id. (citing Edwards v. Sullivan, 937 F.2d 580, 584-85 (11th Cir. 1991)).

Whether considering the opinions of treating, examining, or non-examining physicians, good cause exists to discredit the testimony of *any* medical source when it is contrary to or

unsupported by the evidence of record. Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004). "Good cause may also exist where a doctor's opinions are merely conclusory, inconsistent with the doctor's medical records, or unsupported by objective medical evidence." Hogan v. Astrue, 2012 U.S. Dist. LEXIS 108512, *8, 2012 WL 3155570, *3 (M.D. Ala. 2012). The ALJ is "free to reject the opinion of any physician when the evidence supports a contrary conclusion." Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam) (citation omitted); Adamo v. Commissioner of Soc. Sec., 365 Fed. Appx. 209, 212 (11th Cir. 2010) (The ALJ may reject any medical opinion if the evidence supports a contrary finding.).

In support of Plaintiff's argument that the ALJ erred in assigning "very little weight" to Dr. Fitzgerald's opinion that Plaintiff's "moderately severe to severe" back and neck pain precludes him from working (Tr. 203, 590), Plaintiff points to the following evidence which he alleges establishes his disability:

(1) For two years, from February 14, 2012, to February 6, 2014,[8] Plaintiff was treated by Dr. Fitzgerald for depression and

---

[8] It appears that the last treatment record that the ALJ reviewed was Dr. Fitzgerald's May 8, 2013 disability letter. (Tr. 202). Additional treatment records from Dr. Fitzgerald were provided to the Agency on February 11, 2014, seven months after the ALJ's decision on July 15, 2013. (Id. at 681). Nevertheless,

pain in his back, neck, ribs, and shoulders following a car accident on February 13, 2012 (Tr. 469-750);

(2) On February 21, 2012, an MRI of Plaintiff's thoracic spine showed a possible nondisplaced fracture in the fourth posterior right rib, a "*small* left paracentral protrusion at T11-T12," and a possible pulmonary contusion (id. at 445) (emphasis added);

(3) On June 12, 2012, an MRI of Plaintiff's lumbar spine showed a "*mild* posterior disc bulge with a *small* right paracentral component at L5-S1," a "*mild* posterior disc bulge at L4-L5," a "*minimal* posterior disc bulge at L3-L4," and a "probably *mild* central protrusion at T11-12" [9] (id. at 381) (emphasis added);

(4) During the year and three months that Dr. Fitzgerald treated Plaintiff before rendering his opinion that Plaintiff is unable to work, Dr. Fitzgerald's examinations consistently revealed "tenderness" and "muscle spasms" in Plaintiff's cervical, thoracic, and lumbar spine, leading Dr. Fitzgerald to

---

Plaintiff's new evidence has been considered by the Court, as discussed herein.

[9] CT scans of Plaintiff's brain, head, face, chest, and cervical spine taken on February 13, 2012 were completely normal, with the exception of Plaintiff's cervical spine scan, which showed no fracture and only "*mild* narrowing of the disc space C5-C6 with posterior osteophytes," and "bilateral foraminal narrowing" (id. at 399-408) (emphasis added).

diagnose Plaintiff with thoracic and lumbar *sprain* and cervicalgia (neck pain).[10]   Dr. Fitzgerald treated these conditions with intramuscular injections of dexamethasone, methotrexate sodium, and Decadron, as well as Lortab, Soma, and Ibuprofen (id. at 470-510, 549-63, 577-86);

(5) Dr. Fitzgerald also referred Plaintiff for physical therapy for one month, resulting in a 30-40% improvement in his overall condition,[11] and to a chiropractor for two months, also resulting in consistent improvement[12] (id. at 449-67, 479, 484, 497, 510, 524, 530-35, 537, 540, 546).   Plaintiff reported no interest in seeing a surgeon (id. at 506, 585);

(6) Dr. Fitzgerald also diagnosed Plaintiff with

---

[10] Although Dr. Fitzgerald diagnosed Plaintiff with cervicalgia or neck pain, his physical examinations frequently reflected normal findings. (Tr. 470, 474, 478, 482, 486, 490, 550, 554, 578, 583).

[11] Plaintiff underwent physical therapy from February 27, 2012 to March 23, 2012, for a total of eight sessions (Tr. 449-67), and his treatment notes reflect that his ribs had healed and that his physical therapy was going well initially; however, Plaintiff subsequently complained that it was not helping. (Id. at 452-59).   Plaintiff's physical therapist questioned Plaintiff's compliance with his home exercise program. (Id. at 455).   Dr. Fitzgerald instructed Plaintiff to continue with physical therapy. (Id. at 457).   On March 23, 2012, Plaintiff reported a 30% improvement and discontinued treatment. (Id. at 459).   Plaintiff subsequently reported to his chiropractor that he had experienced a 40% improvement in physical therapy. (Id. at 520).

[12] The record reflects that Plaintiff saw a chiropractor from May 17, 2012, to July 27, 2012. (Tr. 518-46).

depression, for which he prescribed Paxil.  (Id. at 490, 492, 494-98).  Despite this diagnosis, Dr. Fitzgerald frequently noted "no anxiety," "no depression," and "no sleep disturbances" or simply made no mention of symptoms of depression whatsoever. (Id. at 469, 474, 478, 482, 486, 503, 577-78, 580-86).

Contrary to Plaintiff's argument, this evidence does not support Dr. Fitzgerald's opinion that Plaintiff is unable to work because of disabling pain.  Indeed, with respect to Plaintiff's primary medical problem (his back pain), the evidence shows no more than "mild," "small," and "minimal" disc bulges at T11-T12, L3-L4, L4-L5, and L5-S1, resulting in "tenderness" and "muscle spasms."  Dr. Fitzgerald diagnosed Plaintiff with thoracic and lumbar "sprain" and neck pain (cervicalgia) and treated him with intramuscular injections, pain medication, physical therapy, and chiropractic care, resulting in significant improvement.[13]  Plaintiff himself expressed no desire to pursue more aggressive treatment, such as surgery.  Other than his treatment at the emergency room on the day of his car accident on February 13, 2012, which is also the alleged onset date, Plaintiff's medical conditions have not

---

[13] Plaintiff's medical records contain frequent notations of improvement in symptoms.  (Tr. 453, 459, 520, 524, 530-35, 537, 540, 546, 578).

required hospitalization or emergency room treatment. [14]
Similarly, Plaintiff's reports of symptoms of depression have
been infrequent and have required no treatment other than an
antidepressant prescribed by his primary care physician.
Curiously, on April 23, 2013, only two weeks before he rendered
his opinion that Plaintiff is unable to work, Dr. Fitzgerald
noted that Plaintiff was "improving well" from the injuries he
sustained to his back, neck, and shoulders in the February 2012
motor vehicle accident. (Id. at 578). All of these findings
are inconsistent with the severity of the opinions set forth in
the May 8, 2013 disability letter.

---

[14] The record does contain emergency room treatment records prior
to Plaintiff's alleged onset date of February 13, 2012. In
2006, Plaintiff was treated in the emergency room after being
hit with a pipe during an altercation. (Tr. 432). X-rays of
his ribs, scapula, face, and hand were normal. (Id. at 434-40).
On November 7, 2009, and December 15, 2009, Plaintiff presented
to the emergency room with complaints of low back pain. On the
first occasion, the physical examination revealed muscle spasms
(id. at 431), and on the second occasion, it was normal. (Id.
at 423-24, 430-31). On both occasions, Plaintiff was given
Lortab and discharged. (Id.). A lumbar spine x-ray taken on
December 15, 2009, showed "mild" narrowing of the lumbosacral
interspace without significant arthritic change and "small"
upper lumbar anterior osteophytes. (Id. at 426-27). On July 9,
2010, Plaintiff presented to the emergency room with complaints
of chest and shoulder pain after a fall. (Id. at 358, 366-69).
X-rays revealed a possible nondisplaced fracture in two ribs.
(Id. at 359, 418). On March 10, 2011, Plaintiff was treated in
the emergency room for a foreign body in his eye. (Id. at 415).
On May 2, 2011, Plaintiff was treated in the emergency room
after a ladder fell on his back. X-rays showed a normal spine,
with the exception of "minimal" curvature in the lower thoracic
lumbar region. (Id. at 410, 413).

16

Plaintiff also argues that the ALJ erred in assigning substantial weight to the December 13, 2011 [15] opinion of consultative examiner, Dr. Rex Harris, M.D., that Plaintiff was capable of performing light to sedentary work in the work place. (Id. at 208, 378; Doc. 12 at 2-4).  The record shows that Dr. Harris based his opinion on his pre-accident physical examination findings and x-rays of Plaintiff's lumbar spine, which showed no more than "mild" degenerative changes.  (Id. at 378).  Plaintiff argues that Dr. Harris did not have the benefit of the post-accident CT scans and MRIs; thus, the ALJ's reliance on Dr. Harris' opinion was misplaced.  (Id.).

While Plaintiff is correct that Dr. Harris did not have the benefit of the CT scans of Plaintiff's brain, head, face, chest, and cervical spine or the MRIs of Plaintiff's thoracic and lumbar spine taken after the accident on February 21, 2012, the results of those CT scans were completely normal (id. at 399-408), with the exception of Plaintiff's cervical spine scan, which showed no fracture and only "mild" narrowing of disc space at C5-C6 with posterior osteophytes and bilateral foraminal narrowing (id. at 404-08).  In addition, the February 21, 2012 MRI of Plaintiff's thoracic spine showed a possible nondisplaced

---

[15] While there is some confusion as to the precise date of Dr. Harris' report, Defendant acknowledges that Dr. Harris' report was completed on December 13, 2011, not December 13, 2012. (Doc. 15 at 2; Tr. 378).

fracture and a "small" left paracentral protrusion at T11-T12 (id. at 445), and the June 12, 2012, MRI of Plaintiff's lumbar spine showed "mild," "small," and "minimal" disc bulges at L3-L4, L4-L5, L5-S1, and T11-12.   (Id. at 381).   Although Dr. Harris did not have the benefit of these diagnostic tests when he rendered his opinion that Plaintiff can perform light to sedentary work, none of these tests suggests any disabling medical condition, nor do they contradict Dr. Harris' opinion that Plaintiff is capable of performing light to sedentary work. Therefore, the ALJ properly assigned substantial weight to Dr. Harris' opinion.

Having reviewed the record at length, the Court finds that the ALJ had good cause to reject Dr. Fitzgerald's opinion that Plaintiff's "moderately severe to severe" back and neck pain prevents him from any type of gainful employment, as that opinion is inconsistent with the substantial evidence in the case.   In addition, the Court finds that the ALJ properly assigned substantial weight to the opinion of Dr. Harris that Plaintiff can perform light to sedentary work, as that opinion is consistent with the substantial evidence in the case. Finally, the Court finds, based upon the evidence detailed above, that substantial evidence supports the ALJ's RFC assessment for a range of light work, with the stated restrictions.   (Id. at 205).   Accordingly, Plaintiff's claim

18

must fail.

### B.   Whether the ALJ erred in applying the three-part pain standard?

Next, Plaintiff argues that the ALJ erred in failing to properly evaluate his complaints of pain.  (Doc. 12 at 5-6). Specifically, Plaintiff argues that the ALJ ignored the post-accident CT scans and MRIs, as well as Dr. Fitzgerald's treatment records showing frequent use of pain medication, which, Plaintiff argues, satisfies the pain standard and establishes his disability.  (Id.).  The Government counters that the ALJ reasonably evaluated all of the evidence of record (including Plaintiff's subjective complaints of pain and post-accident x-rays, CT scans, and MRIs), that the ALJ identified valid reasons for discounting Plaintiff's subjective statements, and that the ALJ's credibility evaluation is supported by substantial evidence.  (Doc. 15 at 10-12).  Having carefully reviewed the record in this case, the Court finds that Plaintiff's claim is without merit.

When evaluating a claim based on disabling subjective symptoms, the ALJ considers medical findings, a claimant's statements, statements by the treating physician or other persons, and evidence of how the pain (or other subjective symptoms) affects the claimant's daily activities and ability to work.  20 C.F.R. § 416.929(a).  In a case where a claimant

attempts to establish disability through his or her own testimony concerning pain or other subjective symptoms, a three-part standard applies.  That standard requires: "(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain [or other subjective symptoms] arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain [or other subjective symptoms]."  Hubbard v. Commissioner of Soc. Sec., 348 Fed. Appx. 551, 554 (11th Cir. 2009) (unpublished) (quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)).  The Social Security regulations further provide:

> [S]tatements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence (including statements about the intensity and persistence of your pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that you are disabled.

20 C.F.R. 404.1529(a) (2013).

"A claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient

20

to support a finding of disability." Foote v. Chater, 67 F.3d 1553, 1561 (11th Cir. 1995). Stated differently, "if a claimant testifies to disabling pain [or other subjective symptoms] and satisfies the three part pain standard, he must be found disabled unless that testimony is properly discredited." Reliford v. Barnhart, 444 F. Supp. 2d 1182, 1186 (N.D. Ala. 2006). Therefore, once the determination has been made that a claimant has satisfied the three-part standard, the ALJ must then turn to the question of the credibility of the claimant's subjective complaints. See id., 444 F. Supp. 2d at 1189 n.1 (the three-part standard "is designed to be a threshold determination made prior to considering the plaintiff's credibility."). If a claimant does not meet the standard, no credibility determination is required. Id.

In assessing a claimant's credibility, the ALJ must consider all of the claimant's statements about his symptoms and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. See 20 C.F.R. § 404.1528. Such credibility determinations are within the province of the ALJ. Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005). However, if an ALJ decides not to credit a claimant's testimony about his or her subjective symptoms, "the ALJ must articulate explicit and adequate reasons for doing so or the record must be obvious as to the credibility

finding." Strickland v. Commissioner of Soc. Sec., 516 Fed. Appx. 829, 832 (11th Cir. 2013) (unpublished) (citing Foote, 67 F.3d at 1562); see also Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983) (although no explicit finding as to credibility is required, the implication must be obvious to the reviewing court). Failure to articulate the reasons for discrediting testimony related to pain or other subjective symptoms requires, as a matter of law, that the testimony be accepted as true. Holt, 921 F.2d at 1223.

The Eleventh Circuit has held that the determination of whether objective medical impairments could reasonably be expected to produce the pain or other subjective symptoms is a factual question to be made by the Secretary and, therefore, "subject only to limited review in the courts to ensure that the finding is supported by substantial evidence." Hand v. Heckler, 761 F.2d 1545, 1549 (11th Cir. 1985), vacated on other grounds and reinstated sub nom., Hand v. Bowen, 793 F.2d 275 (11th Cir. 1986). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. See Nye v. Commissioner of Social Sec., 524 Fed. Appx. 538, 543 (11th Cir. 2013) (unpublished).

Assuming arguendo that Plaintiff has satisfied the threshold three-part pain standard, his claim still fails inasmuch as the ALJ's credibility finding is supported by

substantial evidence in this case.  The ALJ found that, while
Plaintiff's medically determinable impairments could be expected
to cause some of his alleged symptoms, his testimony regarding
the intensity, persistence, and limiting effects of his symptoms
was "not entirely credible" based on the inconsistency between
his testimony and the other record evidence.  (Id. at 206).
Specifically, the ALJ found Plaintiff's allegations of disabling
pain to be inconsistent with the diagnostic tests in the record
(pre and post accident x-rays, CT scans, and MRIs) which
demonstrated no abnormalities likely to cause such severe
symptoms; the absence of evidence of an emotional component
likely to produce pain of a psychogenic nature; and the physical
examination findings in the record which failed to establish the
existence of neurological deficits, significant weight loss,
muscle atrophy, or other observable signs usually associated
with protracted pain of the intensity, frequency, and severity
alleged.  (Id. at 207).

     As ALJ found, the substantial evidence detailed above
confirms that the diagnostic testing (pre and post accident x-
rays, CT scans, and MRIs) has revealed no more than "mild,"
"minimal," and "small" abnormalities in Plaintiff's spine
(resulting in a diagnosis of back "sprain"); that none of his
medical conditions has required hospitalization, or emergency
room visits; that Plaintiff's examination findings have largely

shown no more than neck pain and stiffness and back "tenderness" and "muscle spasms;" and that Plaintiff's symptoms have improved significantly with physical therapy, chiropractic care, injections, and medication.

On the other hand, Plaintiff has failed to direct the Court's attention to objective medical evidence that confirms the severity of his alleged pain, nor has he shown that his medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain. See Holt, 921 F.2d at 1223. Though his subjective complaints of pain are well documented in his medical records, no credible medical evidence suggests that his pain is of the disabling severity claimed by Plaintiff herein.

After a careful review of the record, the Court finds that the ALJ's credibility finding is supported by substantial evidence and that his reasons for discrediting Plaintiff's testimony were sufficiently articulated in the decision. See 20 C.F.R. § 404.1529(c)(2)-(4); (Tr. 206-08).  As previously noted, this Court may not decide the facts anew, reweigh the evidence, or substitute its judgment but must accept the factual findings of the Commissioner where they are supported by substantial evidence and based upon the proper legal standards. See Bridges v. Bowen, 815 F.2d 622, 624 (11th Cir. 1987) ("the findings and decision of the Secretary are conclusive if supported by

substantial evidence."); <u>accord</u> <u>Hand</u>, 761 F.2d at 1549.
Accordingly, Plaintiff's claim must fail.

> **C. Whether the Appeals Council erred in failing to properly consider the additional evidence submitted by Plaintiff?**

Last, Plaintiff argues that the Appeals Council erred in
failing to properly consider the additional evidence he
submitted after the ALJ's decision on July 15, 2013. (Doc. 12
at 7-8). Specifically, Plaintiff states that he submitted
additional medical records and deposition testimony from Dr.
Fitzgerald supporting Dr. Fitzgerald's opinion set forth in the
May 8, 2013, disability letter, and the Appeals Council refused
to consider the additional evidence on the basis that it did not
relate to the time period in question. (<u>Id.</u>; Tr. 591). The
Commissioner counters that the Appeals Council did not err in
failing to grant review because the new evidence is merely
cumulative of the evidence that was before the ALJ and,
notwithstanding the new evidence submitted by Plaintiff, the
substantial evidence supports the ALJ's decision. (Doc. 15 at
13-15). Having carefully reviewed the record in this case, the
Court finds that Plaintiff's claim is without merit.

"With a few exceptions, the claimant is allowed to present
new evidence at each stage of [the] administrative process."
<u>Ingram v. Commissioner of Soc. Sec. Admin.</u>, 496 F.3d 1253, 1261

(11th Cir. 2007).   "Evidence submitted for the first time to the Appeals Council is determined under a Sentence Four analysis." Jack v. Commissioner of Soc. Sec., 2015 U.S. Dist. LEXIS 176372, *21, 2015 WL 10353144, *6 (M.D. Fla. Dec. 30, 2015), *report and recommendation adopted*, 2016 WL 706364 (M.D. Fla. Feb. 23, 2016) (citing Ingram, 496 F.3d at 1261).   "The Appeals Council must consider new, material, and chronologically relevant evidence and must review the case if 'the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.'"   Ingram, 496 F.3d at 1261 (quoting 20 C.F.R. § 404.970(b)).   "[W]hen a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous."   Id. at 1262.   Evidence is material if it is "relevant and probative so that there is a reasonable possibility that it would change the administrative outcome." Caulder v. Bowen, 791 F. 2d 872, 877 (11th Cir. 1986).

In this case, Plaintiff submitted subsequent treatment records and deposition testimony from Dr. Fitzgerald to the Appeals Council, and the Appeals Council considered the new evidence but found that it did not provide a basis for changing the ALJ's decision because it related to a later time.[16]   (Id. at

---

[16] As Plaintiff points out, the Appeals Council found that the additional evidence related to a later time and, thus, did not

1-2).   Plaintiff argues that the Appeals Council erred because
the following evidence related to the period in question and
would have changed the administrative outcome in this case: On
July 16, 2013, Dr. Fitzgerald testified in a deposition in a
civil action that Plaintiff has a "bulging disc," *i.e.*, "bony
structures . . . [that] break down. . . [and] start impinging on
the nerve that's coming out."   (Id. at 625; Doc. 12 at 7-8).
Dr. Fitzgerald further testified, "you see these ligaments that
are here? They tear. That's what this guy had. And when they
tear, then it allows these bones to come up and it destabilizes
the joint so that these bones can come up and ride into the
nerve." (Id. at 629; Doc. 12 at 8).

   Having reviewed the new evidence submitted by Plaintiff,
particularly the portion highlighted by Plaintiff above, the
Court finds, as the Appeals Council found, that nothing in the
new evidence suggests that Plaintiff's back and neck pain, or
any other impairment alleged by Plaintiff, is disabling.
Rather, the new evidence is, for the most part, merely
cumulative of that considered by the ALJ and reflects ongoing

---

provide a basis for changing the ALJ's decision.   (Tr. 2).
Although Plaintiff is correct that some of the evidence does
relate to the period in question, that evidence does not provide
a basis for changing the ALJ's decision, for the reasons
discussed herein.   Therefore, any error by the Appeals Council
in failing to grant review on the erroneous basis that none of
the evidence related to the time period in question is harmless.

treatment of the same medical conditions considered by the ALJ.[17] (Tr. 598-663).   In fact, *each month* from July 15, 2013, to January 22, 2014, the new treatment notes reflect that Plaintiff was "improving well."   (Id. at 685, 689, 698, 703, 713, 721, 727, 731, 735, 740, 744).   In addition, Dr. Fitzgerald's deposition testimony merely restates the opinions set forth in the May 8, 2013 disability letter, which the ALJ had good cause to discredit for the reasons already stated herein.   (Id. at 638).   For each of these reasons, the additional evidence would not have changed the administrative outcome.   Thus, those records do not warrant a remand for further consideration of the evidence.   See Ingram v. Commissioner of Soc. Sec. Admin., 496 F.3d 1253, 1261-62 (11th Cir. 2007) ("[W]hen a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous."); Caulder v. Bowen, 791 F. 2d 872, 877 (11th Cir. 1986) (new evidence is material if it is "relevant and probative so that there is a reasonable possibility that it would change the administrative outcome.").

---

[17] The Court notes that Dr. Fitzgerald testified that Plaintiff's reluctance to pursue surgical intervention was reasonable given the high failure rate of back surgery.   (Tr. 633-34).   While this new evidence explains for the first time why Plaintiff chose physical therapy and chiropractic care over surgery, it does not suggest that Plaintiff is disabled.   Therefore, it does not render the denial of benefits erroneous or warrant reversal.

Accordingly, Plaintiff's claim must fail.

**V.    Conclusion**

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff's claim for supplemental security income be **AFFIRMED**.


**DONE** this **28th** day of **September, 2016.**

                              /s/ SONJA F. BIVINS
                    UNITED STATES MAGISTRATE JUDGE